I represent Bruce Hattrick and he is the appellant in this case. I presented three arguments. The first two arguments go to the conviction and are suppression or Fourth Amendment type arguments. The third argument is an argument concerning the safety valve and a sentencing argument. In support of the second argument, the argument that the search warrant was invalid because it does not contain a direction to seize or the word seize or seizure, I cited United States v. Grubbs on pages 16 and 17 of the opening brief and that's 377 F. 3rd, 1072. That case was reversed by the Supreme Court last month, 126 S. Court, 1494. However, the points of law for which I cited Grubbs are still valid and still have vitality. I cited other cases in addition to Grubbs in that portion of the brief including Spolatro and Hotal, H-O-T-A-L. And again, the points for which I cited Grubbs, the key point was that a search warrant, which is when officers undertake a search with a And I believe the government conceded the point in its response brief. Secondly, in the reply brief on page 5, I discovered an error after I filed the brief. And near the top of page 5, I referred a defendant's argument in the trial court that he voluntarily consented to the search and, of course, I meant that he did not voluntarily. Yes, Your Honor. The initial argument is that the travel trailer on Mr. Hatcher's property was a dwelling. Judge Aiken found that it was not a dwelling. As a result, she did not reach the issue of where the curtilage began or ended, finding there's no dwelling and therefore there's no curtilage. If the court agrees with the this structure was a dwelling, then the case would need to be remanded back for Judge Aiken to determine where the curtilage began and ended. Why should we disagree with Judge Aiken on this point? That is to say, she goes through a fair amount of detail saying, you know, there was one, I guess, suit coat in the closet, there was one old newspaper, there were no She says, you know, this doesn't look to me as though this is being used as a dwelling within the meaning of the Fourth Amendment. But she overlooks many facts that were brought out in the brief and that were part of the record. The record in the hearing, I was not the attorney, as I'm sure the court knows, but most of the hearing had to do with issues like, was there a fence around the entire perimeter of the property? And more than that, about the issues of custody and consent, which arose prior to the obtaining of the warrant. And Judge Aiken didn't reach those consent issues. She found that since it wasn't a dwelling, the observations were sufficient and I don't need to go into these But can you help me on the question of dwelling? What evidence goes the other way that Judge Aiken either didn't fully appreciate, didn't see, or didn't mention? Yes, Your Honor. In this case, the defendant used the trailer as a full-time residence as recently as August of 2002. And that was a little over a year before the search. It was a full-time residence. In Barajas Avalos, the case Judge Aiken states controlled, it was never a full-time residence at all, at no time. And then in the last year, up until the time of the search, it was a half-time home. It had electricity and running water, a microwave. Did it have electricity and running water at the time of the search? Pardon me, Your Honor? Did it have electricity and running water at the time of the search? I believe the testimony was that it had been shut off shortly before the time of the search, but up until a week or two before the search. There were microwave plates, cups, canned food. There was an outhouse-type area, a functioning restroom for showers, a washer and dryer near the trailer, videotapes, games, a satellite TV subscription, a hot tub, and the fencing of the entire perimeter, even though there may have been gaps that the officers leaked through, that also can show an intent. But what about the testimony on use, what the place was used for? Doesn't that testimony amount to the fact that he didn't use it as a dwelling for at least a year? Pardon me? He used it as a half-time dwelling. Half-time or less? Yes, he had another dwelling. Less than half-time, much less than half-time. I believe his testimony was half-time and there wasn't any other testimony on that issue. Uh-huh. So his testimony that he actually dwelled there half-time? Yes, Your Honor. And there was, of course, no contrary testimony. The officers could only testify about what they found at the moment that they came in, and there was much explanation, but the defendant tended to perseverate, talked a lot, repeated himself a great deal. The testimony was very lengthy, voluminous, and Judge Aiken didn't mention these aspects of that testimony in her opinion. I don't want to leave the other issues out, and I notice I'm getting near time where I need some rebuttal. The issue of the safety valve I wanted to bring up briefly. Now, this was a case where there was no indication of a leadership role by the defendant. The pre-sentence report didn't mention any such leadership role. There was never any evidence of a leadership role until he went to the safety valve debrief and debriefed honestly. And his statements were interpreted or construed by the government as stating that he had led others. And as a threshold issue, we argue that violates the right against self-incrimination. He's required to come in and testify or tell truthfully what happened, and then when he does so, he's disqualified from the safety valve solely based on information that he's given. And there is no published Ninth Circuit case on this issue one way or the other. The government relies on a Second Circuit case called Cruz. Finally, I'm going to leave myself one minute for rebuttal. The second issue on suppression, the argument that the warrant failed to include the word seize or seizure, the government argues that, well, everything's in plain view. This, again, is an issue that the judge didn't reach. Judge Aiken didn't reach these consent issues, these custody issues on the first motion to suppress argument, and she didn't reach the plain view issue on the second argument. So if the court concludes, contrary to Judge Aiken, that the warrant was invalid, then plain view would have to be addressed for the first time in the trial court.  Thank you, Your Honor. And you've saved some time, and you have saved some time. Good afternoon, Your Honors. May it please the Court, my name is Doug Fong, and I represent the government in this matter. I would like to address my comments in this order, first deal with the curtilage issue, then deal with the search warrant and the lack of seizure language, and finally, if there's some time, the Fifth Amendment issue regarding this defendant's safety valve interview and determination. With respect to the curtilage issue, Your Honors, I think there are two concepts that are real important here. First, the defense has raised only the issue of whether this travel trailer is a dwelling with protected curtilage. When you look at the facts, however, even at the defendant's best argument, the critical observations in the search warrant, that being the two locations where the officers smelled marijuana, were both made from far outside any curtilage that this travel trailer may have had. We submitted Government's Exhibit 4 during the search warrant hearing. That's in your materials at our government's picture of the record number one. That shows the map and almost the precise distances from where the officers observed the odors. The first smell occurred 410 feet from the travel trailer. That being in the brush, not even close to any area there that would constitute curtilage, even if the travel trailer were considered a dwelling. The second smell of marijuana occurred at least 161 feet, again, from the travel trailer, far outside of the edge of whatever this naturally defined clearing may be. So, even if this travel trailer were considered a dwelling, the officers' observations, both smells of marijuana occurred from within the woods, far from this particular travel trailer, and even by all the cases that this circuit has reviewed regarding curtilage, would be far outside any curtilage that might have existed. Are you saying that even though, first of all, it's true, isn't it, that District Court, Judge Aiken, made no finding on curtilage, right? That's correct. All right. So, even though the District Court never addressed it, it's okay because it's so far out that nobody would disagree that it's not curtilage? That's correct, Your Honors. And, moreover, I think Mr. Frank cited the case of U.S. v. Johnson, and he cited for this proposition that it overrules some of the cases we cited, State v. Traynor and so forth, and it doesn't. But the critical fact of U.S. v. Johnson really is this, is that this Court can review and does review de novo the issue of whether something is curtilage or not. And given that, we have all the facts and evidence. This Court can look at the facts just as well as Judge Aiken did and say, look, these observations, even if there is curtilage, as a matter of law, there's a natural clearing here, and the initial smell of marijuana was made 325 feet outside of even the natural clearing of this particular travel trailer. But what's more, Judge Fletcher, you asked Mr. Frank, well, what evidence goes the other way? What evidence in this case goes against the government? And the answer really, Judge, is this, is there's no evidence to contradict Judge Aiken's findings. There's nothing that would indicate that her findings of fact were a clear error. Well, let me ask it this way. I'm focusing now on Judge Aiken's finding that the trailer was not being used as a dwelling, such as to trigger this notion of curtilage with respect to a dwelling. That's correct. Now, there was a fair amount of evidence that it was being used as maybe as much as half time as a dwelling. Here's a legal question I have, and I don't know the answer to it. Do we look at what appeared to the officers to be the case, that is to say, when they went up and looked at it, or do we look in addition to what we learn later from testimony, assuming we believe it, he says, well, listen, I'm there half the time. I wasn't there then, but I'm there half the time. Yes. Judge Fletcher, I think the answer is you look at both. And the cases since Dunn cited, some of the cases cite Dunn and say, well, you know, the Court placed a lot of weight on the fact that there was some objective criteria, that the officers were able to see from overhead that this was a barn separate from the house and so forth. And they cite the Supreme Court as saying, well, the officers had some objective criteria before they went and stuck their eyes and looked through the cracked doors of Dunn's barn. But what the subsequent cases don't cite also with Dunn is that the Supreme Court also goes on to say that from open fields, when the officers were walking and getting close, they smelled the odor of phenolacetic acid as well in Dunn, even before they got to the barn. And the Supreme Court went on both of those. But I'd like to focus on whether or not the officers were entitled to believe that this travel trailer was not being used as a residence. What if it were true? Let's assume for the moment we simply believe the testimony of the defendant that he was there half the time. Does that make it a residence for purpose of the Fourth Amendment? Let's suppose it. Let's suppose the defendant had been living there every single day. No, let's suppose in accordance with his testimony about half the time. Or half the time. We're stuck with that. And I think that regardless of whether or not the Supreme Court. Why are you stuck with that? Why is Judge Aitken not entitled to disbelieve that? I'm sorry? Why are you stuck with that? Why is Judge Aitken not entitled to disbelieve that? The reason is this, Judge. If you look at the other evidence, the items found in the travel trailer were all dated. If you look at the comparison of the photos of the defendant's houses, and I have the original exhibits here if your Honor wants to look at them, Exhibits 16 and 17 show the defendant's present residence at the time where everything was there. You looked at the photographs. You looked at what was surrounding the travel trailer. There was no hot tub there. If there was a washer and dryer there, the officers certainly didn't see it. If there was any laundry that the defendant had, it certainly wasn't outside. This is the middle of December when it's cold in Southern Oregon. There was nothing there to indicate, even objectively from the outside without going into the travel trailer, that anyone was using that travel trailer as a dwelling at that present time. And that's why I think Don ultimately looks at, well, is there anything there that would indicate to anybody passing by that this area was used for domestic use outside of the marijuana grove? I think maybe the only thing that might indicate some domestic use is there's a dog in the dog kennel. And that dog is basically guarding the marijuana grove. So when you look at Judge Aiken's findings and you compare the exhibits with this defendant's house being fully furnished and heated, with the travel trailer not having water at the time, not having electricity, or where this defendant is saying, well, I used the bathroom in some hole away from the premises. I used my hot tub there. I think it was like the year before, but there's no hot tub and there's no recent use inside this travel trailer. That all indicates that, in fact, objectively, subjectively, that this is not a situation where this travel trailer is being used domestically, not even half-time or quarter-time, particularly in the middle of December. I think I heard you say, then, that you're not stuck with it. I think I heard you say that she's entitled not to believe that he's there half-time. I mean, let's suppose the evidence was that this defendant lived there because the issue is, did he live there or not in December of 2003? Let's suppose we take for given that he has lived there every day. We are basically stuck with those facts. I mean, the officers have no way of knowing for sure, obviously, but that's something that the judge would consider in evaluating, well, is this thing a dwelling? Or it could be a guardhouse for the marijuana site. And they have strictly a commercial purpose as opposed to, say, something for everyday living. It's one thing to have the defendant living his life in this travel trailer and foregoing the luxuries of his house. It's another thing for, say, him living there solely to protect his marijuana growth. I see my time is running out. With respect to the seizure issue, I think that there's one critical aspect that your honors need to evaluate in determining whether or not this warrant is valid, and that is this. The particularity requirement of the Fourth Amendment applies to objects and places. It does not apply to actions, the actions being the search or the seizure. What's got to be particular is not what you're going to do, which is search and seize, but rather where are you going to go to search the place, and what are you going to look for to seize? And so if there's any confusion, it always arises in the context of, well, where are we going to search, and what are we going to seize? But it never arises in the context of, well, are we entitled to search or are we entitled to seize? Before your time runs entirely on you, could you respond to the safety valve argument? Yes. The issue in Washburn, and I think the Ninth Circuit case that we have right now is Washburn, and basically that says, look, there's no Fifth Amendment right not to do with safety valve debris. And what the defense wants to do is to distinguish between, well, using a safety valve debris or a lack of debris against a person to either, say, with the crews, enhance the person's sentence or disqualify, as opposed to using the person's safety valve debris from disqualifying him in the first place. And that's what that fifth safety valve factor is about. The bottom line on the safety valve analysis is that there's either a Fifth Amendment right or there isn't. And there's no partial Fifth Amendment right to say, well, we can use it to enhance the person's sentence, but we can't use it to disqualify him from the safety valve. Otherwise, if you made those distinctions, there would be no purpose to having this last prong, this debris being separate from, say, the requirement of being a manager or having a gun or having any kind of criminal record. Thank you very much. Thank you. Your Honors, Mr. Fong mentioned two smells. The first smell, he said, was more than 400 yards away from the trailer. The problem with that first smell, it doesn't matter. They couldn't detect where it was coming from. They were in the middle of the brush. There was no realization or recognition by the officers that a smell was coming from the vicinity of the clearing and the travel trailers until they got to the closer second smell. And at that point, we contend they were in the curtilage, at least arguably in the curtilage. On this no seizure language in the warrant, the warrant does not authorize anyone to seize anything. It doesn't say seize. It doesn't say seizure. There's nothing about it. It says you may search this property for these things. You may search, but there's nothing about seizing at all. So if those seizures were authorized, they couldn't have been authorized by that warrant, and Judge Aiken ruled that they were authorized by that very warrant, which didn't authorize any seizure. Finally, on the safety valve issue, there is no case, not even Cruz, the Second Circuit case, that says this can happen, that says what happened to Mr. Hattrick can happen. There's no evidence that you are disqualified from the other four criteria. You go in and give an honest and truthful and complete safety valve debriefing, and you're then disqualified because you revealed, arguably, leadership. There's no such case. Thank you. Thank both of you for your argument. The case of United States v. Hattrick is now submitted for decision.
judges: Noonan, Tashima, W. Fletcher